```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   ANDRE DAVIS,                                             :
                                                            :   **MEMORANDUM DECISION**
                                      Plaintiff,            :   **AND ORDER**
                                                            :
                  - against -                               :   20-cv-2945 (BMC)
                                                            :
   COMMISSIONER OF SOCIAL                                   :
   SECURITY,                                                :
                                                            :
                                      Defendant.            :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff, a former construction worker who sustained an on-the-job neck injury, seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled as defined under the Social Security Act for the purpose of receiving disability insurance benefits. The ALJ found that plaintiff has severe impairments of a "disorder of back; mild asthma; and degenerative joint disease of the right shoulder." Notwithstanding those severe impairments, the ALJ also found that plaintiff has sufficient residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours out of an 8-hour workday; and sit for 6 hours out of an 8-hour workday. These activities are subject to limitations imposed by the ALJ: he can only perform frequent rather than constant handling, fingering, and feeling; occasional pushing or pulling; no overhead reaching; no climbing; and no prolonged exposure to chemicals, dust, fumes or noxious odors. Because there are jobs in the national economy that plaintiff could perform despite his impairments and with those restrictions, the ALJ found that he was not disabled.

Plaintiff's argument is that the ALJ gave too much weight to the opinion of a consulting physician and a worker's compensation physician and not enough weight to the opinion of plaintiff's treating orthopedist, objective testing in the record, and plaintiff's own description of his impairment. This argument has to be evaluated under the new regulation, 20 C.F.R. § 404.1520c, that went into effect for claims filed after March 27, 2017.

In many cases, the new regulation makes it harder for the claimant to prove disability in two respects, one substantive and one procedural. First, the most obvious change is that treating physician opinions are no longer given any special deference. Id. § 404.1520c(a). Second, of the five factors that the regulation sets forth to evaluate medical evidence, the ALJ only needs to discuss the first two: "supportability" and "consistency," which the regulation states are the "most important factors." Id. § 404.1520c(b)(2). The ALJ needs to consider, but need not discuss, the remaining three factors set forth in the regulation, that is, the medical source's relationship with the claimant; the source's medical specialization; and any "other factors."[1] Id. § 404.1520c(b)-(c). This means that procedural remands for inadequate articulation are less likely under the new regulation. "Supportability" means the "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s) or prior administrative medical finding(s)." Id. § 404.1520c(c)(1). "Consistency" means how the medical source's opinions compare with other evidence in the record. Id. § 404.1520c(c)(2).

Because of the more limited articulation requirements under the new regulation, review of the Commissioner's decision in federal court will often focus more on what the record has to

---

[1] Non-exclusive examples of "other factors" set forth in the regulation are the medical source's familiarity with other evidence in the record, and knowledge of how the determination of disability in the social security context is made.

say in support of the ALJ's decision rather than what the ALJ said himself. At the same time, the restriction against federal courts undertaking a *de novo* review of the record, in favor of showing deference to the ALJ's decision, appears to continue unabated. There is some tension in those two bookended principles, and it is very much apparent in this case. I have to determine if the ALJ appropriately considered and articulated grounds for "supportability" and "consistency," which themselves require close analysis of each piece of evidence in the record. If I determine that he did, I then have to consider whether the unarticulated factors point in the other direction, for although supportability and consistency are the most important factors, they are not necessarily controlling if they are eclipsed by the other three factors. And I have to do this without reweighing the evidence, since that is the ALJ's role.

I start by considering the supportability of the opinion of plaintiff's physician, orthopedist Dr. Samuel Thampi, who treated plaintiff for the cervical spine (neck) injury that he suffered at work. He completed a questionnaire for the Workers' Compensation Board. The ALJ found his opinions in that questionnaire "unpersuasive" in part because they were "conclusory." Dr. Thampi opined that plaintiff could do "less than a sedentary job." He found plaintiff could not handle items weighing more than 5 pounds; that he could not stand or walk more than 1/3 of the day; and that he could never climb, bend, stoop, squat or reach overhead. But the form of the report did not ask him to specify the "objective medical evidence" that supported these opinions, so he didn't, nor did he "present" in his report any "supporting explanations," 20 C.F.R. § 404.1520c(c)(1), because the form didn't ask him to do that either. His evaluation therefore does poorly on the supportability front.

His evaluation does better on "consistency," which requires me to look at the other medical evidence in the record. There is an MRI report showing that plaintiff has four herniated

discs and a deformed spinal cord. Another MRI showed tendinosis and partially torn fibers in plaintiff's right shoulder. That would seem generally consistent with Dr. Thampi's opinion.

On the other hand, Dr. Thampi's opinion is largely inconsistent with the consulting examination report of Dr. Thomas Nipper, who examined plaintiff twice for workers' compensation purposes, and whose opinions the ALJ found "somewhat persuasive." Dr. Nipper found that plaintiff could occasionally lift up to 20 pounds. Aside from some reduced range of motion in his neck, Dr. Nipper found that plaintiff had no tenderness or muscle spasms in his neck or shoulder, intact strength in his right arm, and slightly decreased light touch sensation in the ring and small fingers of right hand. He rejected the need for surgery. He found plaintiff's shoulder normal and that any pain in the shoulder was the result of plaintiff's neck injury. Dr. Nipper, in making his report, stated that he had reviewed the MRIs and plaintiff's other treatment records, including opinions from Dr. Thampi and other orthopedists or neurosurgeons. He diagnosed a "cervical sprain." In terms of supportability, Dr. Nipper listed the neck and shoulder range of motion tests that he had performed.

However, Dr. Nipper's opinion itself doesn't do all that well on "consistency." He stated that he reviewed the MRI reports, but he diagnosed a "cervical sprain" despite one MRI showing four herniated discs and a deformed spinal cord. A "sprain" refers to a soft tissue injury[2]; herniated discs reflect skeletal damage. In addition, although Dr. Nipper opined that he had reviewed a report from another worker's compensation physician, neurosurgeon Frank M. Moore, Dr. Nipper's opinion seems to have ignored what is the most conclusive structural diagnosis in the record – Dr. Moore had reviewed the same MRI report and found a "fairly large"

---

[2] See Matthew G. Zmurko et al., Cervical sprains, disc herniations, minor fractures, and other cervical injuries in the athlete, 22 Clin. Sports Med. 513, 514 (2003).

4

disc herniation, certainly not a sprain. And where Dr. Nipper concluded that surgery was not needed, Dr. Moore thought that "anterior cervical discectomy at C6-7 is warranted and indicated," and that plaintiff could not return to work without the surgery.

In addition, the ALJ did not mention another report by a neurosurgeon, Nicholas Post, who saw plaintiff at least twice. He found weakness in plaintiff's right arm (3/5 strength) and numbness. He also recommended surgery based on his finding a "large" disc herniation. His diagnosis was "cervical disc disorder" with radiating pain to the right arm. His opinion was unequivocal: "Patient needs surgery."

The Commissioner has stressed Dr. Nipper's finding that plaintiff has full crouching and squatting ability and has no gait problems. That is inconsistent with the limitations placed upon plaintiff by the ALJ prohibiting those activities, which I infer is why the ALJ found Dr. Nipper's opinion only "somewhat persuasive." But more importantly, it is practically a non-sequitur, as plaintiff was not reporting any leg or lower back pain. This case is about plaintiff's ruptured discs in his neck, and the pain that radiates from that into his right shoulder, not whether he can ambulate or descend from an examining table without assistance.

The only other relevant opinion that the ALJ expressly mentioned was that of Dr. Sumit De, a consultative physician whose opinion the ALJ found to be "only partially persuasive," which is still better than the "unpersuasive" finding afforded to Dr. Thampi's opinions. This more generous weighing of Dr. De's opinions was because, as stated by the ALJ, those opinions were "supported by and not inconsistent [with] the evidence as a whole" and, significantly, "the functional capacity set forth in the present decision" – that is, the ALJ's own assessment. This last rationale strikes me as somewhat circular, as I don't see how the ALJ can reject an opinion

as inconsistent with his own assessment when he should not be making his own assessment until he has considered that opinion.

In any event, it is not clear to me how the ALJ found Dr. De's opinion even partially persuasive. For example, Dr. De found that plaintiff had only 3/5 strength in his right hand; that was as high a degree of impairment found in any of the medical opinions. More importantly, Dr. De's opinion strikes me as particularly vague when it comes to the important question of residual functional capacity – he found that plaintiff had a "moderate" limitation for pushing and pulling and activities requiring him to turn his head, a "mild-to-moderate" limitation for carrying, and a "moderate-to-marked" limitation for heavy lifting. Neither Dr. De, the ALJ, or the Commissioner in this proceeding have defined what mild, moderate or marked mean, and plaintiff professes not to know either. Left to my own devices, I would conclude that the terms mean a little bit, a fair amount, and severe, respectively, but those aren't much more helpful anyway. Dr. Thampi's much more specific functional analysis of how long plaintiff can walk, sit and stand seems more probative, as well as more on point. See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (descriptions of impairments as moderate and mild result in "an opinion couched in terms so vague as to render it useless in evaluating the claimant's residual functional capacity") (quotation marks omitted).

In my effort to avoid reweighing the evidence, one useful technique is to look for red flags in the various opinions. As noted above, Dr. Thampi's opinion fares poorly on the supportability factor, but that is because the form he completed didn't ask him to support his opinions. I don't consider that a red flag any more than I consider Dr. De's failure to be more specific about plaintiff's RFC to be a red flag. These are just omissions, albeit omissions that

weaken the respective opinions. Giving Dr. Thampi or Dr. De a different form might well have led to a more specific opinion.

In contrast, a real red flag for me is in Dr. Nipper's diagnosis of a "cervical sprain." No other medical opinion in the record says that. It is, in fact, a blunder, as it is flatly inconsistent with the MRIs showing herniated discs, a finding that is not only supported but uncontradicted by the objective evidence in the record. Yet a doctor's opinions can be almost entirely dependent on an accurate diagnosis. It takes no medical degree to appreciate that a sprained neck resulting from a work-related accident is unlikely to be as problematic as ruptured discs in the neck from that same work-related accident. Although, under both the new and old regulation, there is no disqualifier *per se* for any medical opinion, such a plain error does raise a question as to Dr. Nipper's opinion in its entirety.

I also see a red flag in Dr. De's opinion: he indicated in his report that his specialty is urology. I do not know why the Commissioner would arrange for a urological consult on a neck injury. Of course, there is no reason why a licensed albeit out-of-specialty physician cannot render an opinion, and there is nothing in the new regulation that disqualifies such an opinion. But it does not make any sense for a urologist to evaluate the severity of disc herniations in the neck and accompanying shoulder impairments. It may explain why Dr. De felt compelled to use vague terms like mild, moderate and marked, as well as the even more amorphous gradations between them (like "moderate to marked"). I can't think of a reason why even partial weight would be afforded to such an opinion.

In sum, when one considers the opinions of the orthopedists and neurosurgeons (of which there are several) in this record, and disregards the ALJ's own conclusion of RFC to the extent it contradicts that evidence (because, as discussed above, that kind of prejudgment reflects circular

reasoning), it is not Dr. Thampi's opinion that appears as the outlier in this record. Rather, the outlier is Dr. Nipper's opinion that plaintiff has merely a sprained neck with the resulting, relatively minor and temporary limitations that flow from that as opposed to ruptured discs. I might therefore conclude that the best supported and most consistent evidence in the record suggests a much more restricted RFC than that at which the ALJ arrived. However, that would be intruding on the ALJ's role, so instead I will remand with instructions for the ALJ to more specifically consider the neurosurgical and orthopedic opinions in the record before arriving at a conclusion on RFC, with special attention to the "consistency" factor.

Since the case is being remanded, there are two other factors that bear mention. First, as noted above, the ALJ did not, and was not required to, discuss the third factor under the new regulation, that is, the relationship between the medical sources and the plaintiff. But if the ALJ on remand finds that the evidence under the supportability and consistency factors is reasonably close to equipoise, the "relationship" factor will work in favor of the opinions of a treating physician like Dr. Thampi. That will, in all probability, most often be the case under the new regulation. On this record, at least, four of the five considerations listed under the "relationship" factor – length of relationship; frequency of examinations; purpose of the relationship; extent of the relationship; and specialization – are most satisfied by Dr. Thampi's opinions as compared to the other opinions in the record.

Finally, it is clear from the ALJ's opinion that he was meaningfully influenced by the fact that despite numerous recommendations that plaintiff have spinal surgery, plaintiff has thus far declined to do so. The ALJ did not expressly state this, but one can only draw an inference from what he did state, which suggests an opinion that if plaintiff's neck injury was as debilitating as

8

plaintiff claims, then he would have gone ahead with the surgery, and the fact that he did not suggests the injury is really not that bad.

I accept that an unreasonable refusal to undertake medically recommended treatment is a factor that an ALJ can consider in evaluating the severity of a claimant's injury. For example, a theatre usher who sustains a simple ankle break but refuses to have it casted does not have a persuasive case that he can no longer perform his past relevant work. More realistically, a diabetic whose condition would be well-controlled but for the fact that he is non-compliant with his insulin prescriptions will have difficulty presenting a persuasive case of disability.

However, if the ALJ is going to draw such an inference about a claimant's having declined treatment recommendations, it needs to be based either on solid logic shared by laypeople or medical expert opinion in the record that strongly suggests that the claimant is outside the mainstream of patients who face his medical choices. There is neither here. Spinal surgery on the neck is not like a cast for a broken ankle or an insulin injection for a diabetic. Neck surgery strikes me as a very tough decision to make even if doctors recommend it, and it is possible that a claimant might reasonably decline it, yet still have a degree of impairment sufficient to meet the definition of disability. See De Leon v. Sec'y of Health & Hum. Servs., 734 F.2d 930, 935 (2d Cir. 1984) (to receive benefits, a claimant "need not be a total basket case," "completely helpless or unable to function") (quotation marks omitted). There is nothing in the record addressing the amount of time it takes to recover, the amount of pain during recovery, whether that pain is permanent, the potential complications if things go wrong (nerve damage and paralysis occur to my medically untrained mind), or the degree of risk of those complications, let alone the success rate for someone in plaintiff's condition. On remand, if the

ALJ believes that plaintiff's rejection of surgery may be a material factor, he should obtain the view of a medical expert who knows the answers to these questions.

Accordingly, for the reasons set forth above, plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion for judgment on the pleadings is denied. The case is returned to the ALJ pursuant to the fourth sentence of 42 U.S.C. § 405(g) for an additional hearing consistent with the identified errors in this decision.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
May 5, 2021